UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| KRISTA COSTA, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 18-11523-LTS |
| NISSAN NORTH AMERICA, INC., | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 20)

January 18, 2019

SOROKIN, J.

Krista Costa has sued Nissan North America, Inc. ("Nissan") for violating chapter 93A of the Massachusetts General Laws, as well as state and federal implied warranty laws, by selling her a Nissan Altima with what she alleges is a defective transmission. Nissan has moved to dismiss Costa's complaint in its entirety, contending she has not stated a plausible legal claim. Because the complaint provides fair notice to Nissan and contains ample facts that, if true, would entitle Costa to relief, Nissan's motion is DENIED.

I.     BACKGROUND

Only a short synopsis of Costa's allegations is necessary for present purposes. Costa purchased a new 2014 Nissan Altima in October 2014. Doc. No. 1 ¶ 7. The car features a continuously variable automatic transmission ("CVT"), which Nissan "promoted . . . as a major selling point" that would enhance the vehicle's "smoothness," "fluid-feeling performance," "drivability and responsiveness." Id. ¶¶ 1, 14-18. Notwithstanding these promised benefits,

Costa alleges that she, like other drivers of 2013 and 2014 Altimas, "frequently experienced . . . shaking of the vehicle at seemingly random moments during operation." Id. ¶ 7. Finally, "while [Costa was] operating her vehicle" in June 2018, "the transmission failed." Id. Although "she was able to idle into a parking spot without serious incident," she had to "pa[y] to have her vehicle towed" to the dealer, where she "was informed she needed to have her CVT replaced" at a cost of more than $3,500. Id.

According to Costa, her experience is not unique. She alleges that defective CVTs have caused "shuddering, hesitation, stalling, unusual noises, and ultimately, premature transmission failure" for many owners and operators of 2013 and 2014 Altimas, posing "a significant safety risk" and requiring costly repairs. Id. ¶¶ 1-2, 10-13. She further alleges that Nissan knew of the problem, failed to disclose or remedy it, and instead engaged in misleading promotion of the subject vehicles. Id. ¶¶ 19-30. This conduct, Costa claims, violated the Massachusetts Consumer Protection Act ("Chapter 93A"), the implied warranty of merchantability under Massachusetts law, and the federal Magnuson-Moss Warranty Act. Id. ¶¶ 39-86.

This Court has jurisdiction over Costa's claims pursuant to the Class Action Fairness Act based on diversity of citizenship and the aggregate amount in controversy. 28 U.S.C. § 1332(d); Fed. R. Civ. P. 23.[1]

II.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In other words, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[1] The viability of Costa's class allegations is a question for another day.

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted); Fed. R. Civ. P. 8(a). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

III. DISCUSSION

Nissan's motion to dismiss is meritless. Only a brief discussion is warranted.

A. Chapter 93A Claim

Nissan first accuses Costa of "describ[ing] vague symptoms supposedly related to transmission performance, [but] not identify[ing] any particular defect in the vehicle's design, workmanship or materials." Doc. No. 21 at 5. According to Nissan, Costa has neither alleged "any particular misrepresentation" nor "identif[ied] any legally enforceable standard that the CVT components did not meet." Id. at 8-9.

To state a Chapter 93A claim, a plaintiff must allege "that a deceptive act or practice by the defendant caused an injury or loss suffered by" the plaintiff. Vass v. Blue Diamond Growers, No. 14-13610-IT, 2016 WL 1275030, at *1 (D. Mass. Mar. 31, 2016); see Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017) (explaining that a viable Chapter 93A claim requires "identifiable harm" such as "real economic damages, as opposed to some speculative harm" (quotation marks omitted)). "[A] bare assertion that a defendant, while representing the opposite, has knowingly manufactured and sold a product that is defective . . . does not suffice to state a viable claim" under Chapter 93A. Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 888 (Mass. 2008).

3

Here, Costa has described how the alleged CVT defect manifested itself in reality both generally, e.g., Doc. No. 1 ¶ 1, and in her own car while she operated it between October 2014 and June 2018, id. ¶ 7. She also has plainly asserted that the alleged defect culminated in a total transmission failure, which occurred while she was driving and required the costly replacement of her CVT. Id. In other words, Costa has not simply identified a theoretical injury which she speculates could arise due to an unspecified "defect," like the plaintiffs in Iannacchino. She alleges that she personally experienced recurrent safety-related performance problems, actual property damage, and real economic harm.

Moreover, Costa has identified particular promotional statements made by Nissan which, she claims, were deceptive in light of the problems she says resulted from the allegedly defective CVTs—problems she states were known to Nissan before Costa purchased her car. E.g., id. ¶ 15. Contrary to Nissan's urging, no more is required of Costa at the pleading stage. See Baranco v. Ford Motor Co., 294 F. Supp. 3d 950, 962-63 (N.D. Cal. 2018) (finding Iannacchino did not require dismissal of non-conclusory defect claims "not expressly tied to a particular regulatory violation"); Falk v. Nissan N. Am., Inc., No. 17-4871-HSG, 2018 WL 2234303, at *9 (N.D. Cal. May 16, 2018) (concluding Iannacchino did not require dismissal of Chapter 93A claim where "transmission problems . . . actually manifested in [plaintiff's] vehicle"); cf. Iannacchino, 888 N.E.2d at 888 (limiting its analysis to cases in which plaintiffs had suffered no personal injury or property damage).

B.     Warranty Claims

As to Costa's state and federal warranty claims, Nissan emphasizes Costa's admission that she drove her Altima for nearly four years (and, apparently, for tens of thousands of miles) without serious incident. Doc. No. 21 at 10-12. Suggesting that any "issues [Costa] was

4

experiencing with her transmission . . . clearly did not prevent her from using the vehicle for transportation," Nissan seeks a finding that the car was "merchantable as a matter of law." Id.[2]

When cars are involved, Massachusetts law provides that "a breach of the implied warranty of merchantability occurs only where a defect is so basic as to render the vehicle unfit for its ordinary purpose of providing safe, reliable transportation." Finigan-Mirisola v. DaimlerChrysler Corp., 869 N.E.2d 632, 2007 WL 1977505, at *1 (Mass. App. Ct. 2007). This implied warranty is not necessarily satisfied by a showing that the car was capable of transporting; "the vehicle must be safe and reliable to be merchantable." Baranco, 294 F. Supp. 3d at 976; accord Falk, 2018 WL 2234303, at *3.

In her complaint, Costa describes a CVT defect which interfered with the performance of the subject vehicles—including her own car—while they were operating. She does not merely allege that her transmission "simply w[ore] out faster than might otherwise be expected," Haag v. Hyundai Motor Am., 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013); rather, she describes safety-related consequences, such as sudden loss of momentum, unexpected surges of power, and inoperable brake lights, Doc. No. 1 at ¶¶ 1, 7, 13; see Falk, 2018 WL 2234303, at *3 (reviewing nearly identical allegations with respect to CVTs in another Nissan model and noting that "unreliable acceleration alone . . . poses a risk for any driver on the road"). "The severity of these issues and the extent to which they may have rendered the vehicle unmerchantable is a question of fact." Baranco, 294 F. Supp. 3d at 977. Costa's allegations are plainly sufficient to survive a Rule 12(b)(6) challenge to her warranty claims.

---

[2] Nissan also challenges the warranty claims by reiterating its belief that Iannacchino requires a showing that the vehicle failed to meet a specific government standard. Doc. No. 21 at 10. That view fares no better here than it did with respect to the Chapter 93A claim. See Iannacchino, 888 N.E.2d at 889 (reasoning that Chapter 93A claim and breach of implied warranty claim "should survive or fail under the same analysis").

IV.  CONCLUSION

For the foregoing reasons, Nissan's motion to dismiss (Doc. No. 20) is DENIED.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge